* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral argument before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS *Page 2 
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the parties at all relevant times.
3. EMC Insurance Companies is the carrier on the risk.
4. Plaintiff's average weekly wage is $262.61, yielding a compensation rate of $175.07.
 * * * * * * * * * * * EXHIBITS
The following exhibits were admitted into evidence by the Deputy Commissioner:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Plaintiff's Medical Records
 (c) Stipulated Exhibit 3: Industrial Commission Forms
 (d) Stipulated Exhibit 4: Plaintiff's Recorded Statement
 (e) Stipulated Exhibit 5: Plaintiff's Discovery Responses
 (f) Stipulated Exhibit 6: Defendants' Discovery Responses
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 35 years old. He has a ninth grade education and a work history of manual labor employment. *Page 3 
2. Plaintiff was employed by defendant-employer as a mechanic and worked in sales and service. Plaintiff serviced and repaired boats and boat trailers.
3. Plaintiff began having pain and numbness in his right wrist in approximately 2001. Plaintiff did not seek medical treatment and bought an over-the-counter ace bandage/brace and periodically wrapped his wrist with the ace bandage/brace. His wrist continued to bother him periodically through 2005. However, plaintiff never lost any time from work as a result of his condition.
4. On Friday, June 24, 2005, plaintiff was instructed to tear an old boat trailer down to rebuild it and replace the wood and all the bolts. The trailer was heavily rusted and in a badly deteriorated condition due to being used extensively in and around the ocean. Plaintiff experienced difficulty removing the old rusty bolts from the trailer. Plaintiff had never worked on a trailer with bolts so badly rusted or bolts that were so difficult to remove. He had to use a heavy impact wrench because a regular wrench did not have enough torque to remove the bolts. Plaintiff was required to exert an unusual level of force to remove the bolts. Toward the end of his shift, plaintiff began experiencing significant pain in his right wrist. The next morning plaintiff continued to experience pain in his right wrist.
5. Nick Jackson, plaintiff's co-worker and boat mechanic for the defendant-employer, testified that he recalls plaintiff working on an old rusty trailer during the summer of 2005. However, he could not recall the specific date. Mr. Jackson recalled plaintiff coming into the shop and stating that he hurt his wrist during the summer of 2005. Mr. Jackson also indicated that the day plaintiff worked on the rusty trailer and the day plaintiff reported hurting his wrist could be the same day. *Page 4 
6. Following the onset of his wrist pain on Friday, June 24, 2005, plaintiff worked half-days on Monday, June 27, 2005 and Tuesday, June 28, 2005. At lunchtime on June 28, 2005, plaintiff sought medical treatment for his right wrist at Shelby Walk-In Clinic. Plaintiff did not return to work after this date and has not worked in any employment since June 28, 2005.
7. Ultimately, on October 18, 2005, plaintiff began receiving treatment for his right wrist from Dr. James Boatright, an orthopaedic surgeon with a specialty in hand surgery at OrthoCarolina.
8. Dr. Boatright testified that he instructed plaintiff "he was unable to use his hands for work activities."
9. Dr. Boatright recommended that plaintiff undergo surgery. The surgery was performed on November 9, 2005. During the surgery, Dr. Boatright found that plaintiff suffered from three separate conditions: 1) a tear of his triangular fibrocartilage, 2) tearing and laxity of his scapholunate interosseous ligament, and 3) carpal tunnel syndrome. All three of these conditions were addressed by the surgery performed by Dr. Boatright.
10. Plaintiff continued to have problems following the surgery with pain in his right wrist. As of May 30, 2006, Dr. Boatright felt that plaintiff may need another operation to shorten the ulna because of a failed result from the triangular fibrocartilage debridement. The surgery was scheduled but apparently was canceled by plaintiff. It is Dr. Boatright's opinion that plaintiff decided that he would live with the condition, as is, without surgery.
11. On October 20, 2006, Dr. Boatright assigned plaintiff permanent work restrictions that restricted his lifting, pushing, and pulling to a sedentary level. Specifically, plaintiff was restricted to lifting 13 pounds occasionally, pushing 15 pounds occasionally, and pulling 15 *Page 5 
pounds occasionally. Plaintiff was also instructed to avoid performing any activities that would cause him to use grasping or vigorous handling with his right hand.
12. On October 20, 2006, Dr. Boatright also assigned plaintiff a nineteen percent (19%) permanent partial impairment rating to his right hand.
13. Dr. Boatright testified to a reasonable degree of medical certainty that plaintiff's triangular fibrocartilage tear and his scapholunate interosseous ligament tear and laxity pre-existed June 24, 2005. He further testified to a reasonable degree of medical certainty that plaintiff's job activities on June 24, 2005 aggravated the triangular fibrocartilage tear and his scapholunate interosseous ligament tear and laxity and that this aggravation resulted in the treatment he provided, including the surgery.
14. Based upon the testimony of Dr. Boatright, the undersigned find that plaintiff's triangular fibrocartilage tear and his scapholunate interosseous ligament tear and laxity pre-existed June 24, 2005; that plaintiff's job activities on June 24, 2005 involving removal of the rusty bolts aggravated these pre-existing conditions; and that such aggravation resulted in the medical treatment plaintiff received for these conditions after June 24, 2005, including the surgery performed by Dr. Boatright.
15. Dr. Boatright was unable to render a medical opinion regarding the cause of plaintiff's carpal tunnel syndrome or whether plaintiff's job placed him at an increased risk for carpal tunnel syndrome.
16. Plaintiff testified that he had applied for approximately five jobs including Tahoe, Elizabeth Weaving, Able Marine, Grover Industries, Jiffy Lube and other smaller companies. He further testified that his job search included looking in newspapers, calling around and stopping and asking to fill out applications. *Page 6 
17. The undersigned find that plaintiff has conducted a reasonable job search, without the assistance of vocational rehabilitation, to find suitable employment based upon his work restrictions and educational background, but to date has been unsuccessful.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Due to the unusual physical exertion by plaintiff at work on June 24, 2005, he sustained a compensable injury by accident to his right hand arising out of and in the course of his employment with employer-defendant. N.C. Gen. Stat. § 97-2(6).
2. The greater weight of the evidence of record establishes a causal relationship between plaintiff's injury by accident of June 24, 2005 and his triangular fibrocartilage tear condition and his scapholunate interosseous ligament tear/laxity condition, and thus these conditions are compensable. The evidence of record fails to establish a relationship between plaintiff's accident of June 24, 2005 and his carpal tunnel syndrome, and thus this condition is not compensable.Click v. Pilot Freight Carriers, 300 N.C. 164, 265 S.E. 2d 389 (1980).
3. As a result of his compensable injury, plaintiff is entitled to temporary total disability compensation at the rate of $175.07 per week from June 29, 2005 and continuing until legally permitted to terminate compensation by plaintiff's return to work or Order of the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to payment of medical expenses incurred or to be incurred as a result of his compensable medical conditions as may reasonably be required to effect a cure, provide relief, or lessen the period of disability, including the treatment of these conditions provided by Dr. Boatright. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 A W A R D
1. Subject to the attorney's fee approved below, defendants shall pay temporary total disability compensation to plaintiff at the rate of $175.07 per week from June 29, 2005 and continuing until legally permitted to terminate compensation by plaintiff's return to work or Order of the Commission. As much of said compensation as has accrued shall be paid in a lump sum.
2. Defendants shall pay for medical expenses incurred or to be incurred as a result of plaintiff's compensable medical conditions as may reasonably be required to effect a cure, *Page 7 
provide relief, or lessen the period of disability, including the treatment of these conditions provided by Dr. Boatright.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) is hereby approved to be deducted from sums due plaintiff and paid directly to plaintiff's counsel in one lump sum of the accrued amount due plaintiff and thereafter by deducting every fourth compensation check due plaintiff.
4. Defendants shall pay the costs due the Commission.
This the 6th day of March, 2008.
 S/___________________
 DANNY LEE McDONALD
 COMMISSIONER *Page 8 
 CONCURRING: S/_____________ BUCK LATTIMORE
 COMMISSIONER S/_____________ PAMELA T. YOUNG CHAIR *Page 1